## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **COMMUNICARE, LLC, d/b/a SUBURBAN** : | |
| **PAVILION NURSING AND** : | **Honorable Judge:** |
| **REHABILITATION CENTER, as** : | |
| **Authorized Representative of ANNIE ELLIS,** : | |
| 4700 Ashwood Drive : | |
| Cincinnati, Ohio 45241 : | |
| : | |
| **Plaintiff,** : | |
| : | **Case No.** |
| **v.** : | |
| : | |
| **CYNTHIA C. DUNGEY,** : | |
| In her official capacity as the Director of : | |
| the Ohio Department of Job and Family Services, : | |
| 30 East Broad Street, 32nd Floor, : | |
| Columbus, Ohio 43215, : | |
| : | |
| And, : | |
| : | |
| **BARBARA SEARS** : | |
| In her official capacity as the : | |
| Director of the Ohio Department of Medicaid : | |
| 50 West Town Street, Suite 400 : | |
| Columbus, Ohio 43215, : | |
| : | |
| **Defendants** : | |
| : | |

_____

## COMPLAINT AND PETITION FOR DECLARATORY JUDGMENT

## I.    PRELIMINARY STATEMENT

As a condition of receiving federal funds, the State of Ohio is required to operate the

Medicaid program in compliance with the Social Security Act and implementing regulations,

pursuant to 42 U.S.C. § 1396(c).  This case concerns the failure of Defendant Cynthia C. Dungey

("Dungey"), the Director of the Ohio Department of Job and Family Services ("ODJFS" or

1

"Defendant"), and Barbara Sears ("Sears" or "Defendant"), the Director of the Ohio Department of Medicaid ("ODM" or "Defendant"), to ensure that Defendants comply with their obligation to afford Medicaid benefits to a resident in a long-term care facility in accordance with the Constitution and the laws of the United States. Defendants are directly responsible for policies necessary for the implementation of a system for determination of eligibility for Medicaid that complies, in all aspects, with federal law.

Defendants' failure to comply with both Ohio and federal law to determine Medicaid benefits to Annie Ellis, a Resident of Petitioner's skilled nursing facility, is a violation of the Federal Medicaid Act at 42 U.S.C. § 1396a (a)(17)(b) (1988); 20 C.F.R. § 416.1201(a)(1); the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.,* and the Rehabilitation Act of 1973, 29 U.S.C. § 794a, *et seq.*

## II.     **PARTIES**

1.      Plaintiff Annie Ellis ("Ellis" or "Plaintiff") received 24-hour long-term nursing facility services provided by Communicare LLC, d/b/a Suburban Pavilion Nursing and Rehabilitation Center ("Suburban Pavilion").   Suburban Pavilion has been appointed as Ms. Ellis' Authorized Representative.

2.      Communicare, LLC, d/b/a Suburban Pavilion Nursing and Rehabilitation Center is a corporation which owns and operates skilled nursing facilities throughout Ohio, with corporate headquarters located at 4700 Ashwood Drive, Cincinnati, OH 45241.

3.       Defendant Cynthia C. Dungey is the Director of the Ohio Department of Job and Family Services ("ODJFS or Defendant"), which is the department of the State of Ohio that, under  Ohio law and applicable federal regulations, was the single state agency charged with

responsibility for administering and supervising Ohio's Medicaid program before 2011.  At all times material to this Complaint, Defendant Dungey acted under color of state law in administering the regulations, customs, policies, and practices material herein.  She is sued in her official capacity only.

4.      Defendant Barbara Sears is the Director of the Ohio Department of Medicaid ("ODM or Defendant"), which is the department of the State of Ohio that, since 2011, under Ohio law and applicable federal regulations, is the single state agency charged with responsibility for administering and supervising Ohio's Medicaid program.  At all times material to this Complaint, Defendant Sears acted under color of state law in administering the regulations, customs, policies, and practices material herein.  She is sued in her official capacity only.

### III.   JURISDICTION AND VENUE

5.      This action arises under the Title XIX of the Social Security Act, 42 U.S.C. § 1396a *et seq*. ("the Medicaid Act"), the Americans with Disabilities Act ("ADA"), 42 U.S.C.  § 12131 *et seq.*, 28 C.F.R. § 35.130, 42 C.F.R. 435.725(e)(1), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*, and the Supremacy Clause, U.S. Const., Art. VI, cl. 2.

6.      Jurisdiction is conferred upon this Court by 28 U.S.C.  §§ 1331 and 1343.

7.      Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and Local Rule 82.1.

9.      Medicaid provides health care benefits to qualifying low-income individuals—including, in this case, the elderly and disabled.  42 U.S.C. § 1396, *et seq*.

10.     Medicaid is a joint federal and state program whereby participating states receive federal financial assistance and, in return, must follow the requirements of 42 U.S.C. § 1396a(a), the Medicaid Act and its rules and regulations.

## IV.    STATEMENT OF FACTS

11.    Suburban Pavilion is a skilled nursing facility in the State of Ohio and, as part of its mission, is dedicated to providing compassionate, long-term care for its residents.

12.    Ms. Ellis was an elderly woman who suffered from numerous and severe medical conditions that required her twenty-four (24) hour care and assistance.

13.    At all times relevant hereto, Ms. Ellis suffered from dementia, among other severe medical conditions and required long-term care nursing facility services.

14.    Ms. Ellis suffered from mental illness—including dementia--that substantially impaired her ability to think, communicate, care for herself, or make financial or personal decisions.  She further suffered from physical impairments which substantially impaired her mobility.

15.    At all times relevant hereto, Ms. Ellis was a "qualified individual[] with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 *et. seq.*

16.    On or about October 5, 2013, Ms. Ellis was admitted to Suburban Pavilion for long-term nursing facility services.

17.    Subsequent to her admission to Suburban Pavilion, Ms. Ellis became insolvent and in need of Medical assistance (hereinafter referred to as "Medicaid benefits") to pay for her room, board, care and assistance.

18.    On or about April 9, 2014, Suburban Pavillion submitted an application for long-term care Medicaid benefits to Defendants on Ms. Ellis' behalf Due to Ms. Ellis' severe mental impairments she was unable to access her resources or take the actions necessary to qualify for Medicaid benefits.

19.    On or about February 4, 2015, Ms. Ellis' application for Medication benefits was denied by Defendants based on alleged "excess resources".

20.    On or about April 9, 2015, Cuyahoga Probate Court appointed a Guardian of Estate for Ms. Ellis based on her inability to manage her own affairs and mental incompetence.

21.    On or about May 9, 2015, Ms. Ellis' Authorized Representative appealed the denial of Medicaid benefits issued by Defendant on or about February 4, 2015.

22.    On June 23, 2015, Ms. Ellis passed away while at Suburban Pavilion.

23.    On or about June 26, 2015, Defendant Ohio Department of Job and Family Services' Bureau of State Hearings ("ODJFS"), issued a State Hearing Decision ordering benefits to be afforded to Ms. Ellis with an effective date of benefits of April 9, 2014 (the date she applied for Medicaid benefits).

24.    On or about September 21, 2015, Defendant ODJFS issued a notice regarding Ms. Ellis' benefits indicating that Ms. Ellis was approved for Medicaid benefits for the month of January 2014 and the months of January 2015 through May 2015. Defendant did not grant Medicaid benefits to Ms. Ellis, as it was required to, for the period of April 9, 2014 through December 31, 2014. Subsequent administrative appeals revealed that Medicaid benefits should have been approved for all of 2014.

25.    On or about October 15, 2015, Suburban Pavilion submitted a Level of Care form indicating that Ms. Ellis had received long-term care nursing facility services in all of 2014.

26.    On or about October 22, 2015, Defendant ODJFS issued a 9401 notice that Ms. Ellis was approved for base Medicaid for billing, but not long-term care Medicaid.

27.     On or about December 23, 2016, Ms. Ellis filed an appeal requesting Medicaid benefits be granted pursuant to the June 26, 2015 State Hearing Decision.

28.     Defendants allege that the benefits it was required to provide to Ms. Ellis pursuant to the June 26, 2015 State Hearing Decision were not afforded to Ms. Ellis as Suburban Pavilion failed to submit a level of care and request payment.

29.     Suburban Pavilion submitted a level of care in 2015 which was rejected by Defendants.

30.     Ohio regulations require Suburban Pavilion to submit claims within twelve (12) months of the date of service unless a State Hearing Decision or Agency action prevents the facility from doing so.  If an Agency action prevents a facility from submitting a claim within twelve (12) months, the Agency must issue a "Delay in Payment" letter.

31.     On or about September 19, 2017, Suburban Pavilion requested that Defendants issue a revised form 9401 and a delay in payment letter so that Suburban Pavilion could bill for the approved Medicaid benefits for Ms. Ellis.

32.     On or about September 20, 2017, Defendant ODJFS issued a response rejecting Suburban Pavilion's request and stated "there is no outstanding compliance due for any appeal number for this client".

33.     To date, Defendants have not complied with the June 26, 2015 State Hearing Decision ordering benefits to be afforded to Ms. Ellis with an effective date of benefits of April 9, 2014.

34.     Defendants actions have prevented Suburban Pavilion from submitting a claim for Ms. Ellis' care in 2014 within twelve (12) months.  In order to submit a claim for Ms. Ellis' care in 2014, Defendants are required to issue a "Delay in Payment" letter, which they

refuse to issue.

35. Defendants determined that Ms. Ellis' patient liability was approximately $3,898.00 per month. This determination failed to deduct the cost of Ms. Ellis' incurred expenses for medical care.

36. Ms. Ellis' social security and/or pension payments were sent to, and/or controlled by, her nephew who used such for his own benefit. Ms. Ellis' nephew failed to pay Ms. Ellis' patient liability to Suburban Pavilion.

37. Ms. Ellis never received her social security and/or pension payments and her social security and/or pension payments were not available to her because her son used them for his own benefit.

38. Consequently, Ms. Ellis had no resources to make her patient liability payments to Suburban Pavilion.

39. Ms. Ellis has unpaid patient liability payments owed to Suburban Pavilion for medical care provided to her.

40. Ms. Ellis requested that Defendants allow outstanding medical expenses to be covered for medical care which Ms. Ellis was unable to furnish or provide for through a patient liability. Defendants have not responded to Ms. Ellis' request.

41. To date, Defendants have failed to adjust Ms. Ellis' patient liability and have not provided all Medicaid benefits to Ms. Ellis, as she is entitled to.

42. Ms. Ellis' impairment triggers special due process rights that are designed to protect her from essentially falling victim to her own disability.

43. It is undisputed that Ms. Ellis is "disabled" as defined by the Americans with

Disabilities Act ("ADA") and the Rehabilitation Act. The Rehabilitation Act of 1973 prohibits the Defendant from denying "people with disabilities the opportunity to participate in or benefit from Medicaid[.]" 45 C.F.R. §84.4(1)(i), (ii), (iii) "Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving Federal Financial Assistance" (emphasis added).

44. This means that the Defendant's administration of the Medicaid program cannot be done in such a way as to "have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons." 45 C.F.R. § 84.4(b)(4).

45. Furthermore, Title II of the ADA requires the Defendant to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the program service or activity." 28 C.F.R. § 35.130(b)(3). This includes affording Ms. Ellis benefits which it has been ordered to provide by the Bureau of Hearing pursuant to an administrative decision, and in allowing outstanding medical expenses to be covered for patient liability which Ms. Ellis was unable to put towards her medical care.

46. In *Doe 1-13 by and Through Doe Sr. 1-13 v. Chiles,* 136 F.3d 709 (11th Cir. 1998) the court found that an action brought by disabled individuals will prevail when the action is brought against state officials, who failed to provide Medicaid services with reasonable promptness. Additionally, the *Doe* court found that failing to furnish Medicaid assistance with reasonable promptness to disabled individuals should not exceed 90 days. The action was brought pursuant to 42 U.S.C. § 1983 against officials, alleging unreasonable delays in providing certain services under the state Medicare program. Additionally, in *Brown v. Luna*, 735 F.Supp. 762

(M.D. Tenn., 1990) the Court held that "[a]ll applications pending more than 90 days without an eligibility decision [were to] be awarded interim Medicaid benefits unless [the Agency had] documented that the application has been delayed for good cause."

47.     Plaintiff's application was pending for nearly ten (10) months due to the Agency's failure to assist her with providing the verifications needed to complete her Medicaid application.

48.     In 2008, Congress passed legislation requiring all states to implement electronic asset verification programs ("AVP") to obtain information regarding the financial resources of Medicaid applicants, including those seeking Medicaid coverage for long-term care.  42 U.S.C. §1396w. This requirement has been codified in the federal Medicaid regulations. 42 C.F.R. § 435.945(j).

49.     Federal law imposes on Medicaid agencies an affirmative duty to obtain information regarding a Medicaid applicant's eligibility.  This duty exists independent of the actions of the Medicaid applicant and is consequently not dependent on the extent of an applicant's efforts to obtain eligibility information, or on an applicant's request for assistance. 42 CFR § 435.952.  Furthermore, Medicaid agencies are not permitted to ask applicants to produce information unless that information is unavailable electronically.  42 C.F.R. § 435.952(c).

50.     The Defendants did not seek to obtain any of the Plaintiffs' information electronically via AVP.  Nor did the Defendants try to obtain Plaintiffs' information from secondary sources.  Instead, the Defendants placed the burden of providing information entirely on the Plaintiffs.  These actions violate federal law, which requires agencies to obtain and use items of information relating to Medicaid applicants and beneficiaries to "prevent ineligibility and incorrect payments."  42 C.F.R. § 435.953(a).  No steps are taken by the Defendants to prevent the ineligibility of the Plaintiffs.

51.     As a direct result of the Defendant's failure to timely process Ms. Ellis' Medicaid application, Plaintiff Ms. Ellis has failed to receive Medicaid benefits to pay for the nursing facility services provided by Defendant, which she is entitled to pursuant to federal law.

52.     The Defendant has failed/refused to pay within one year Medicaid claims made by Plaintiff Ms. Ellis, pursuant to 42 C.F.R.  § 447.45(d) which states as follows:

*Timely processing of claims.*

> **(1)** The Medicaid agency must require providers to submit all claims no later than 12 months from the date of service
>
> ......
>
> **(4)** The agency must pay all other claims within 12 months of the date of receipt…[exceptions are excluded as are not applicable.]

42  § C.F.R. 447.45(d).

53.     The Defendant has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to the Plaintiffs' residents, who meet the financial eligibility standards, as required under 42 U.S.C. §1396a(a)(10).

54.     Due to the Defendants' failure to comply with 42 C.F.R. § 447.45(d), Defendants have failed to provide nursing facility services to Plaintiff Ms. Ellis' for her timely and properly filed claims.   Defendant cannot escape its responsibility to provide Medicaid benefits to Ms. Ellis by rejecting the request for level of care determination that was submitted to Defendant by Suburban Pavilion.  Ms. Ellis has failed to receive the nursing facility services required to be provided to her by Defendants and to which Ms. Ellis is entitled pursuant to federal law.

55.     As a condition of receiving federal funds, Defendant is required to administer the Medicaid program in the State of Ohio in compliance with the Federal Medicaid Act, 42 U.S.C.

1396a(r)(1)(A)(ii), and implementing regulations.

56.    In order to qualify for federal funds, a State must submit its Medicaid plan and any amendments to the federal agency that administers the program, the Centers for Medicare & Medicaid Services ("CMS").

57.    Before approving a plan or amendments to a State Plan, CMS conducts a review to determine whether the plan complies with federal requirements.  *See e.g. Douglas v. Indep. Living Ctr. Of S. Cal.*, No. 09-958, slip op. at 1 (U.S. Feb. 22, 2012).

58.    CMS promulgated a federal regulation requiring states to either deduct from eligibility calculations or reimburse incurred medical expenses to Medicaid recipients.  *See* 42 C.F.R. § 435.725(c)(4).

59.    The Federal Medicaid Act codifies this requirement and provides that "with respect to the post-eligibility treatment of income for individuals who are institutionalized," states take "into account amounts for incurred expenses for . . . necessary medical or remedial care recognized under State law but not covered under the State plan…." 42 U.S.C. § 1396a(r)(1)(A)(ii).

60.    CMS' regulations governing the spend down process define "incurred medical expenses" as any medically necessary, expenses for care and services provided to a recipient prior to his determination of Medicaid eligibility, which necessarily includes room and board costs incurred prior to eligibility.  *See e.g. Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.,* 542 F.3d 424, 2008 U.S. App. LEXIS 20318 (4th Cir. 2008) (citing 242 C.F.R. § 435.831).

61.    Ohio regulations define "medical necessity" as "procedures, items, or services that prevent, diagnose, evaluate, or treat an adverse health condition such as an illness, injury, disease or its symptoms, emotional or behavioral dysfunction, intellectual deficit, cognitive impairment,

or developmental disability and without which the person can be expected to suffer prolonged, increased or new morbidity; impairment of function; dysfunction of a body organ or part; or significant pain and discomfort." OAC 5160:1-01(B).

62.     From October 5, 2013 through June 26, 2015, Ms. Ellis incurred expenses for medically necessary care and services she received at Suburban Pavillion.

63.     The costs and services incurred by Ms. Ellis for her medical care at Suburban Pavilion  were, at all times, medically necessary to diagnose, evaluate, and treat her cognitive impairments and adverse health conditions.  .

64.     CMS permits states to deduct incurred medical expenses from a resident's income when calculating Medicaid eligibility. 42 C.F.R. § 435.831(g).

65.      Ohio codified patient share liability and coverage of medically necessary expenses. Under OAC 5160:1-6-07(C), an institutionalized individual receiving Medicaid benefits must pay a patient liability amount to the facility.    Patient liability is determined by the individual's gross monthly earned and unearned income.   O.A.C 5160:1-6-07(F)(1).   However, the following types of health care costs are subtracted from the individual's patient liability:

(a)  Health insurance premiums (including medicaid and medicare premiums) and consinsurance deductibles and copayments, that are incurred by:

  (i) The institutionalized individual;

  (ii) The institutionalized individual's spouse; or

  (iii) The institutionalized individual's minor or disabled child.

(b) The cost of any of the institutionalized individual's incurred expenses for medical care, recognized under Ohio law, but not covered by medicaid and not subject to third-party payment. These unpaid past medical expenses, and any request to subtract such expenses from the patient liability, must meet the following criteria:

(i) The service must have been medically necessary as determined by the administrative agency.

(ii) Expenses for medical care shall not have been incurred while serving a restricted medicaid coverage period (RMCP) per rule 5160:1-6-06.5 of the Administrative Code. Expenses that were incurred while serving an RMCP shall not count as unpaid past expenses and shall not be subtracted from the patient liability calculation.

O.A.C 5160:1-6-07(F)(6).

66. CMS permits state plans to enforce "reasonable limits" on the amount of incurred medical expenses, *however*, the state plans <u>must</u> be approved by CMS before the limits may be imposed on Medicaid applicants. *See* 42 C.F.R. § 435.725(c)(4).

67. According to CMS:

"Section 1902(r)(I)(A) requires States to take into account, under the post-eligibility process, amounts for incurred medical and remedial care expenses that are not subject to payment by a third party. Section I 902(r)(I)(A)(ii) permits States to place "reasonable" limits on the amounts of necessary medical and remedial care expenses recognized under State law but not covered under the State plan. However, those reasonable limits must ensure that nursing home residents are able to use their funds to purchase necessary medical or remedial care not paid for by the State Medicaid program or another third party.

CMS believes some limitations imposed on the age of an incurred expense could be considered reasonable. But the deduction of the expense cannot be further limited by requiring that the expense be incurred only during a period of eligibility for Medicaid. Our position is supported by the medically needy spenddown rules described in the Federal regulations. While the medically needy spenddown rules at 42 CFR 435.831 (g)(2) permit States to exclude expenses incurred earlier than three months before the month of application, 42 CPR 435.831(t)(4) requires that expenses incurred in the three months prior to the month of application must be considered under the spenddown process.

Several States have submitted State Plan Amendments (SPAs) proposing to limit the deduction of incurred medical or remedial care expenses to expenses incurred no earlier than three months preceding the month of application. CMS considers such a limitation, which is based on the age of the incurred expense, to be reasonable. However, the States in question proposed an additional limitation under which the expenses would be deducted only if the individual was actually eligible for Medicaid when

the expense was incurred. CMS does not consider this to be reasonable. Any reasonable limits used by a State must be specified in the State's Title XIX State plan in Supplement 3 to Attachment 2.6-A, "Reasonable Limits on Amounts for Necessary Medical or Remedial Care Not Covered by Medicaid." *It is important to note that if a State does not specify its reasonable limits in the Supplement, it will be assumed that the State does not apply any limits to the deduction of medical or remedial expenses under the post-eligibility process.*"

CMS Opinion Letter attached as Exhibit "A" (emphasis added).

68.     Consequently, Defendants' denial of Ms. Ellis' medical expense income deductions is a violation of Federal Medicaid Regulations as Defendants' denial of her request for coverage .

69.     Defendants have failed to obtain approval from CMS for any state plan amendment dealing with the treatment of income and/or patient liability for medically necessary medical expenses and have failed to permit, as required by Federal Medicaid regulations, the treatment of income and/or patient liability to allow coverage of medically necessary medical expenses.

70.     Consequently, Defendants effectively deprive patients of the right to receive reimbursement of medical expenses and pay deviations for medical costs or invoices, in violation of federal law.

71.     Defendant is *required* by federal law to reimburse Plaintiff for the costs Ms. Ellis and other similarly situated, disabled, long-term care residents, incurred for room, board and medical care received at Suburban Pavilion. *See* 42 U.S.C. § 1396a(r)(1)(A); 42 C.F.R. § 435.725(c)(4).

72.     Federal regulations further require Defendants to deduct Ms. Ellis' misappropriated social security income from its patient liability determination under 20 C.F.R. § 416.1201(a)(1).

73.     The Medicaid Act requires state agencies to **"[t]ake corrective action to ensure [the local agencies'] adherence [to the state plan provisions and the agency's procedures for determining eligibility]").** 42 C.F.R. § 435.903(b) (Emphasis added). **"The agency must**

14

**promptly make corrective payments, retroactive to the date an incorrect action was taken[.]**" 42 C.F.R. § 431.246. (Emphasis added).

74.     According to 42 U.S. Code §1396a(a)(17)(B), Defendant shall only take into consideration income and resources that are available to the applicant or recipient.

75.     Federal law mandates that a Medicaid applicant's resources are not to cause a denial when resources are *unavailable* to the applicant; resources are not available when he or she does not have the *power to liquidate* the asset. 20 C.F.R. § 416.1201(a)(1) (emphasis added).

76.     Where a state Medicaid law conflicts with a federal Medicaid statute or regulation, the state law is unenforceable. *See Lankford v. Sherman*, 451 F.3d 496, 510 (8th Cir. 2006).

77.     A state may not create regulations that are contrary to federal law. *See Gorlick v. Fla. Dep't of Children and Families*, 789 So.2d 1247 (2001).

78.     Defendant's refusal to recognize and allow income deductions for medical expenses is preempted and precluded under Federal Law.

79.     Defendant's refusal to make income deviations due to the unavailability of Ms. Olson's annuity payments is preempted and precluded under Federal Law.

80.     Preemption arises where it would not be possible to comply with both federal and state laws at the same time, "or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress.'" *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir.2008) (quoting *United States v. Locke*, 529 U.S. 89, 109, 120 S. Ct. 1135, 1148, 146 L.Ed.2d 69, 89 (2000)). *See, e.g., Lewis v. Alexander,* Case No. 2006-3963 (E.D. Pa. August 23, 2011) (holding that while a state Medicaid law conflicts with a federal Medicaid statute or regulation, the state law is unenforceable).

81.     The Defendant's medical manuals and general practice are neither law nor regulation, but conflicts with federal statutes in their ignorance of a federally mandated reimbursement procedure, and is therefore is preempted by those federal statutes.

In light of the Defendants' failure to comply with federal and state Medicaid laws, Plaintiff Ms. Ellis havs not been provided room, board, care and nursing facility services by Defendants for the care she received at Suburban Pavilion.

82.     Such actions and inactions by Defendants deprives Ms. Ellis of medical benefits to which she is entitled.

83.     The Defendants' failure to afford Ms. Ellis public benefits and services, to which she is entitled under federal law, and failure to grant Ms. Ellis Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 e*t seq.*

84.     By failing to provide for nursing facility services rendered to Medicaid approved patients, the Defendants have failed to comply with federal law, as preempted by the Supremacy Clause of the United States Constitution, Article VI. The burden placed on the Defendants, should the Court grant the relief requested in this action, is that Defendants will be required to comply with federal Medicaid laws and pay for medical services already rendered to Plaintiffs. The Defendants stand to suffer diminutive, if any, burden by the timely rendering of payment of Plaintiffs' Medicaid claims to the skilled nursing facilities in which they reside.

## V.     CAUSES OF ACTION

## COUNT ONE—DECLARATORY JUDGEMENT

85.     Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

86.     At all times relevant hereto, Ms. Ellis lacked mental and physical capacity to act on her own behalf.

87.     The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

88.     The Defendants' failure to afford Plaintiff her public benefits and services, to which she was entitled under federal law, and failure to grant her Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*, and 28 C.F.R. § 35.130 e*t seq.*

88.     By failing to comply with the federal rules and regulations regarding eligibility, issuing notices, taking into account the lack of physical or mental capacity, and allowing a hearing in instances in which a Medicaid applicant seeks to contest a decision and/or process, Defendants have deprived her of the rights, privileges and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, and as preempted by the Supremacy Clause of the United States Constitution, Article VI.

89.     Because Defendants have failed to comply with federal Medicaid law, applicable authority authorizes the automatic approval of Plaintiff's Medicaid benefits.  *See Smith v. Miller,* 665 F.2d 172, 176 (7th Cir. 1981).

90.     Plaintiffs request that this court issue a Declaratory Judgement stating that Ms. Ellis is to be afforded Medicaid benefits from April 9, 2014 until her death and is to be fully provided

all Medicaid benefits for all care Ms. Ellis received at Suburban Pavilion pursuant to nursing facility services and medical care.

91.     The burden placed on Defendants, should the Court grant the relief requested in this action, is simply that Defendants will be required to comply with federal Medicaid laws; the Defendants stand to suffer diminutive, if any, burden by affording the Plaintiff public benefits to which she is entitled pursuant to federal law.

92.     Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff seeks declaratory relief by this Court.

93.     It is well settled that the District Court's exercise of discretion in a declaratory judgement action should be informed by a number of prudential facts, including: (1) consideration of practicality and efficient judicial administration; (2) the functions and limitations of the federal judicial power; (3) traditional principles of equity, comity, and federalism; (4) Eleventh Amendment and other constitutional concerns; and (5) the public interest. *Smith & Usaha,* note 2, at 116 citing *Wilton v. Seven Falls Company,* 515 U.S. 288 (1995); *Green v. Mansour*, 474, U.S. 64, 72-74 (1985); *Rickover,* 369 U.S. 111 at 112-113; *Public Service Commission of Utah v. Wycoff Company,* 344 U.S. 237, 243-47 (1952). Perhaps the most important factors are whether a declaratory judgement will serve a useful purpose and resolve the controversy between the parties. *Smith & Usaha, supra* note 2, at 116 (collecting cases; *Wilton,* 515 U.S. at 288; *Green v. Mansour,* 474 U.S. 64, 74 (1985); *Rickover,* 369 U.S. 111 at 112-113; *Wycoff,* 344 U.S. at 244.

**COUNT TWO - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE, AND NURSING FACILITY SERVICES MANDATE**

94.     Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

95.     In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendants, while acting under the color of law, has failed to provide Plaintiff with nursing facility services necessary for the health and welfare of the disabled Plaintiff.

96.     The Defendants' violations, which have been repeated and knowing, entitle Plaintiff to relief under 42 U.S.C. § 1983.

## COUNT THREE - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

97.     Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

98.     Plaintiff is a Medicaid-eligible individual who required nursing facility services and resided in Connecticut.

99.     The Defendants are engaged in the repeated, ongoing failure to arrange and provide medical assistance and nursing facility services despite the fact that medical assistance and nursing facility services were medically necessary for Plaintiff.

100.     In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendants, while acting under the color of law, failed to provide services to Plaintiff with "…reasonable promptness…". Furthermore, the Defendants are required to administer the Medicaid program in compliance with 42 C.F.R. §435.930 (requiring applicants be afforded Medicaid benefits without any delay).

101.     The Defendants' violations, which have been repeated and knowing, entitle Plaintiff to relief under 42 U.S.C. § 1983.

## COUNT FOUR – VIOLATION OF THE "AMERICANS WITH

## DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

102.     Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

103.     The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

104.     Plaintiff was a "qualified individual with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq*. and 28 C.F.R. § 35.130 *et. seq*.

105.     The Defendants' failure to afford Plaintiff public benefits and services, to which she was entitled under federal law, and failure to grant her Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq*. and 28 C.F.R. § 35.130 *et seq*.

106.     As a consequence of Defendants' actions as described herein, Plaintiff suffered damages, including compensatory, mental anguish, and other damages.

## COUNT FIVE – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

107.     Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

108.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. Public and federally-funded entities must provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." See 28 C.F.R § 41.51(d).  Policies, practices, and procedures that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the

Rehabilitation Act.

109.    Defendant is a recipient of federal funds under the Rehabilitation Act. The Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

110.    The actions by Defendants constitute unlawful discrimination under 29 U.S.C. § 794(a), violate the mandate that no qualified handicapped person should be denied benefits on the basis of handicap, and violate the regulations implementing this statutory prohibition.  28 C.F.R. § 41.51(d).

111.    Plaintiff is an individual who requires 24-hour skilled nursing services for her health, welfare, and survival.  The Defendants' failure to grant payment of needed benefits to Plaintiff violates § 504 of the Rehabilitation act of 1973 and its implementing regulations.

112.    As a consequence of' Defendant's actions as described herein, Plaintiff has suffered damages, including compensatory, mental anguish and other damages.

### COUNT SIX – VIOLATION OF DUE PROCESS CLAUSE –14TH AMENDMENT OF U.S. CONSTITUTION AND 42 U.S.C. § 1983

113.    Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

114.    To comply with the Due Process guarantees under the United States Constitution, the Defendant must provide the Plaintiff with a meaningful notice that apprises her of the reasons for denial of assistance and the authority for the denial.

115.    Furthermore, Plaintiff is entitled to accommodations due to her physical and/or mental incapacity that allow her to access benefits under the Medicaid program for which she is eligible. Plaintiff is additionally entitled to a hearing when such benefits are denied to her and for the reasons enumerated under the Federal Medicaid act.

116.    Defendant's notices to Plaintiff and the denial of a hearing upon her request for an

appeal of the denial of Medicaid benefits does not adequately apprise her of the action against her, or of the reasons for the denial, or the authority for the denial. The notices are therefore inconsistent with the Due Process Clause of the United States Constitution, Amendment XIV and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, *et seq*., and its implementing regulations.

117. The Defendants acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of her rights, privileges, or immunities secured by the Constitution and laws by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §1983.

118. The above acts were committed under color of state law by the Defendants. Said acts were committed by the Defendants by and through representatives of the Defendants acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants

119. As a consequence of' the Defendants' actions as described herein, Plaintiff suffered damages including compensatory, mental anguish, and other damages.

## COUNT SEVEN – TEMPORARY AND PERMANENT INJUNCTION

120. Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

121. The above acts were committed under color of state law by the Defendants. Said acts were committed by and through representatives of the Defendants acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants.

123. The Plaintiff demand temporary and permanent injunctive relief requiring that the Defendants issue payment of her approved Medicaid benefits.

124. Issue an Order requiring the Defendants to automatically issue payment of Plaintiff's Medicaid benefits.

## VI. REQUESTS FOR RELIEF

1.      Issue a Declaratory Judgment in favor of Plaintiff, requiring Defendants to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

2.      Declare unlawful the Defendants' failure to arrange for medical assistance and nursing facility services to Plaintiff; and declare unlawful Defendants' denial of due process to Plaintiff;

3.      Issue Preliminary and Permanent Injunctive relief enjoining the Defendants from subjecting Plaintiff to practices that violate her rights under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

4.      Issue Preliminary and Permanent Injunctive relief requiring the Defendants to arrange for medical assistance and nursing facility services to Plaintiff and allow due process rights to Plaintiff;

5.      Award Plaintiff the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C. § 1988; and,

6.      Award such other relief as the Court deems just and appropriate, including, but not limited to, compensatory and punitive damages, interest, expenses and costs.

**PLAINTIFFS HEREBY DEMANDS A TRIAL BY JURY.**

**Sb2 INC**

/s/ Elizabeth Wilfong
OH# 0088172
1426 N. 3rd St. Suite 200
Harrisburg, PA 17102
Phone: (513) 814-4144
Fax: (717) 909-5925
ewilfong@sb2inc.com

<u>s/ Katie Z. Van Lake</u>
IL ARDC# 6292120
1426 N. 3rd Street, Suite 200
Harrisburg, PA 17102
Telephone: (516) 509-1289
Facsimile: (717) 909-5925
<u>kvanlake@sb2inc.com</u>
*Pro Hac Vice Motion to be filed*